OPINION
{¶ 1} The defendant-appellant, Terry L. Burks ("Terry"), appeals the September 23, 2005, Judgment of conviction and sentence entered in the Court of Common Pleas, Seneca County, Ohio.
 {¶ 2} On March 31, 2005, Terry and his wife, Amanda R. Burks ("Amanda") along with Courtney Arnold, Amanda's sister, went to a bar ("Piasan's") at approximately 9:00 p.m. While at Piasan's, Terry and Amanda watched wrestling and consumed alcoholic beverages. Terry spent most of the evening at Piasan's but also visited two other bars. Amanda and Courtney also visited two other bars during the evening but both started and finished the evening at Piasan's.
 {¶ 3} Terry and Amanda did not leave Piasan's together that evening, but they both ended up at their residence at 166 Benner Street in Tiffin, Seneca County, Ohio, in the early morning hours of April 1, 2005. When Amanda arrived at home, the two began arguing. The verbal arguments escalated to physical violence. Both describe the physical violence differently. Amanda claims that Terry attacked her and hit her, head butted her, choked her, and struck her with a baseball bat. She denied using any violence against him. Terry admitted that he kicked, head butted and struck Amanda with his fist. He denied striking her with a baseball bat. However, Terry claims that Amanda started the altercation by pulling his hair, striking him with her fist in the head, face, chest, and back, and pushing him into the wall where a corner shelf fell onto the two of them. After the argument, both Terry and Amanda stayed at the marital residence until mid-morning.
 {¶ 4} A little after 9:30 a.m. on April 1, 2005, Glenna Tyree, Amanda's grandmother came to the marital residence to drop off Amanda's children. When she arrived at the residence she decided not to leave the children because she observed broken glass from a window at the front of the house and felt that the conditions were not safe for the children. Glenna Tyree spoke briefly with Amanda at this time. Amanda requested Glenna Tyree take her to the police station; however, Amanda did not leave the residence at that time.
 {¶ 5} At approximately 10:00 a.m. on that same day, Skyla Simms, also Amanda's sister, picked Amanda up at the marital residence. She took Amanda to the residence of their mother's, Karen Smith, where the police arrived regarding the April 1, 2005 incident between Terry and Amanda. At the trial, Skyla Simm testified that on April 1, 2005 "[Amanda] had a — a huge, uhm, it looked like a — like a growth on the side of her head, like on the left side and she had marks on her elbows. And I think she showed me one on her hip later that day." She stated that she believed that Amanda was in pain because Amanda requested Tylenol when they arrived at their mother's house.
 {¶ 6} Officer Robert Bour of the Tiffin Police Department was one of the police who arrived at Karen Smith's residence. He observed that Amanda appeared to be in pain, had several bruises, swelling near her left eye, and a red bloodshot eye. He suggested that she be transported by ambulance to the hospital; however, she declined and her mother advised Officer Bour that she would take her to the hospital.
 {¶ 7} Thereafter, Amanda's mother took her to the emergency room at Tiffin Mercy Hospital where she was examined at 10:50 a.m. by Dr. Ali Khan. During the examination, Dr. Khan ordered x-rays of her lower back, elbows and neck and a CAT scan of her head. Officer Bour and Detective Windsor arrived at the hospital while she was being examined and took digital photographs of her scratches, bruising, lacerations, and abrasions. After a few hours and the completion of the tests, Dr. Khan diagnosed Amanda's injuries as a concussion, head trauma, left elbow contusion, and bruising. She was then released from the hospital with a prescription for Vicodin to relieve the pain.
 {¶ 8} During this time, Terry was arrested by Officer Bour and given his Miranda rights. He informed Officer Bour that they were arguing the night before and that he had hit her. During the interview conducted at the police station, Terry explained his version of the events of March 31 to April 1, 2005 and he admitted there had been physical violence. Specifically, he stated that he had head butted Amanda and kicked her during the incident.
 {¶ 9} On April 20, 2005, the Seneca County Grand Jury returned a four count indictment charging Terry with one count of Abduction, in violation of R.C. 2905.02(A)(2), two counts of felonious assault, in violation of R.C. 2903.11, and one count of domestic violence, in violation of R.C. 2919.25. On June 27, 28, and 29, 2005, a jury trial was held. After the State presented its case in chief, Terry moved under Crim.R. 29 for acquittal on Counts I, II, and III and the trial court denied his motion. At the conclusion of the trial, Terry renewed his Crim.R. 29 motion for acquittal on Counts I, II and III and again the trial court denied his motion. The jury unanimously found Terry guilty of one count of felonious assault and one count of domestic violence. Thereafter, Terry again filed a Motion for Acquittal, which was denied by the trial court on September 22, 2005.
 {¶ 10} On September 22, 2005, a sentencing hearing was commenced. At the conclusion of the sentencing hearing, the trial court sentenced Terry to serve a stated prison term of four years.
 {¶ 11} On October 21, 2005, Terry filed a notice of appeal raising the following assignments of error:
 Assignment of Error 1 THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION UNDERCRIM.R. 29(A) FOR ACQUITTAL ON COUNT TWO.
 Assignment of Error 2 THE CONVICTION OF APPELLANT ON COUNT TWO WAS NOT SUPPORTED BYSUFFICIENT EVIDENCE.
 Assignment of Error 3 THE VERDICT OF GUILTY RENDERED BY THE JURY ON COUNT TWO WASAGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 12} Terry's assignments of error focus on the sufficiency and manifest weight of the evidence in this case. All three assignments of error require a close examination of the evidence.
 {¶ 13} Terry was convicted of one count of Felonious Assault, in violation of R.C. 2903.11(A)(1), a felony in the second degree, and one count of Domestic Violence, in violation of R.C.2919.25(A), a misdemeanor of the first degree.
 {¶ 14} Regarding the Felonious Assault, Terry was convicted pursuant to R.C. 2903.11, which provides:
(A) No person shall knowingly do either of the following:
 (1) Cause serious physical harm to another * * *.
R.C. 2901.01(A)(5) defines "serious physical harm":
"Serious physical harm to persons" means any of the following:
 (a) Any mental illness or condition of such gravity as wouldnormally require hospitalization or prolonged psychiatrictreatment;
 (b) Any physical harm that carries a substantial risk ofdeath;
 (c) Any physical harm that involves some permanent incapacity,whether partial or total, or that involves some temporary,substantial incapacity;
 (d) Any physical harm that involves some permanentdisfigurement or that involves some temporary, seriousdisfigurement;
 (e) Any physical harm that involves acute pain of suchduration as to result in substantial suffering or that involvesany degree of prolonged or intractable pain.
 {¶ 15} In Terry's first assignment of error, he contends that the trial court erred in denying his Crim.R. 29(A) motions for acquittal. Specifically, he alleges that the "serious physical harm" element of felonious assault was not proven beyond a reasonable doubt during the State's case in chief or by the end of trial.
 {¶ 16} Pursuant to State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, it is well settled law in Ohio that "a question is one for determination by the jury when `reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt * * *.'" Bridgeman, 55 Ohio St.2d at 263, citing State v. Swiger
(1966), 5 Ohio St.2d 151, 214 N.E.2d 417, paragraph two of the syllabus, State v. Antill (1964), 176 Ohio St. 61,197 N.E.2d 548, paragraph five of the syllabus. The Ohio Supreme Court stated that the adoption of Crim.R. 29(A) did not change theBridgeman standard.
 {¶ 17} Crim R. 29 states,
(A) The court on motion of a defendant * * * after theevidence on either side is closed, shall order the entry of ajudgment of acquittal of one or more offenses charged in theindictment, information, or complaint, if the evidence isinsufficient to sustain a conviction of such offense oroffenses.
 {¶ 18} In State v. Walker (June 18, 1987), Cuyahoga App. No. 52391, the Eight District Court of Appeals of Ohio stated that "where injuries to the victim are serious enough to cause him to seek medical treatment, a jury may reasonably infer that the force exerted on the victim caused serious physical harm." Furthermore, in State v. Davis (Dec. 19, 2002), 8th Dist. No. 81170, the court held that there was sufficient evidence to sustain a conviction of felonious assault due to serious physical harm when the victim sought medical treatment due to cuts, scrapes and a concussion.
 {¶ 19} In this case, the State presented testimony from Dr. Ali Khan:
Q: * * * Now, Doctor, based on your observations of her andyour examination and taking the patient's history, were you ableto come to a diagnosis?
 A: Yes.
 Q: And, what was your diagnosis of Amanda Burks?
 A: It was an alleged assault, or somebody had beaten her upwith a — with something forceful.
 Q: Did you happen to diagnose any head trauma, such as aconcussion?
 A: Yeah, concussion. Head trauma, left elbow contusion, and Icould see that, uhm, she — she was pretty badly bruised.
 Q: Okay. And, Doctor, what exactly is a concussion?
 A: Concussion is basically, is a — a brain injury, uhm, and it— it can lead to like a short term, uhm, defects, like amnesia,headaches, nausea, vomiting, mental status changes, or it — itcould even lead to severe neurological injuries, too, if theconcussion is severe enough. Basically, concussion is a — is avague term which could include something like a severe braininjury to a mind, a head trauma where there is no brain injury.
 Q: Okay. * * * Based on your medical training and experiencehow did the injuries affect Amanda's senses?
 A: She was obviously emotionally very traumatized, uhm,emotionally, physically. She had bruises on her face and her,uhm, arms and lefts. So, those cosmetic disfigurements. * * *
 Q: Uhm, can a concussion cause sensory reception problems?
 A: Yes, it can.
* * *
Q: Okay. Now, Doctor, based on your education training andexperience, to a reasonable degree of medical certainty, are theinjuries to Amanda's head consistent with injuries suffered by ablunt object such as a baseball bat?
 A: Yes.
* * *
Q: Furthermore, Doctor, based on your education, training andexperience and, based on your examination of Amanda Burks, couldyou explain what degree of pain Amanda Burks suffered as a resultof the injuries you saw on April 1st, 2005?
 A: On a scale of 1 to 10, I'll say 8, 9 or 10.
 Q: Okay. And, would that be prolonged pain?
 A: Yes, it could be prolonged pain.
 Q: Okay. And, Doctor, would it surprise you if Amanda told youtoday she was still in pain?
 A: No, I wouldn't be surprised.
Trial Trans. p. 265-269.
 {¶ 20} In addition, Amanda testified that when she woke up on the morning of April 1, 2005, she was sore and in pain. She testified that her head was throbbing, she had difficulty sleeping, missed two days of work due to her pain, sought medical treatment, took prescribed medication to alleviate the pain, and was in pain for a few weeks after the April 1, 2005 incident.
 {¶ 21} Furthermore, the photographic evidence provided a visual description of the physical injuries to her head and other parts of her body. Officer Bour, Detective Windsor, and Dr. Ali Khan identified the photographs as being a fair and accurate representation of how Amanda appeared on April 1, 2005 at the emergency room of Tiffin Mercy Hospital.
 {¶ 22} After reviewing the trial transcript and the evidence presented therein, we find that the trial court did not err in overruling Terry's motion for a Crim.R. 29 acquittal. We believe that the evidence of "serious physical harm" was certainly established in the State's case in chief to the point that reasonable minds could reach the conclusion that each material element of the crime had been proven beyond a reasonable doubt. Therefore, Terry's first assignment of error is overruled.
 {¶ 23} Terry asserts in his second and third assignments of error that the conviction by the jury was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 24} In State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial and determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt.
 {¶ 25} In contrast, when reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-21.
 {¶ 26} In this case, the jury heard testimony from Officer Robert Bour, Courtney Arnold, Emily Fox, Brianna Beechler, Catherine Brandt, Glenna Tyree, Detective Jason Windsor, Skyla Simms, Amanda Burks, Dr. Ali Khan in the State's case in chief regarding the events that took place on March 31 to April 1, 2005. In addition, defense counsel provided testimony from Joshua Burgess, Karen Smith, Sgt. Scott Lantz, and Terry Burks.
 {¶ 27} As stated above, the State's witnesses provided testimony and evidence with respect to the elements of felonious assault. In addition, Terry testified in his own defense as to the events of April 1, 2005. He stated that:
A: * * * I head-butted her.
 Q: Describe that. What do you mean by head-butting?
 A: Well, I just took my head and head-butted her. * * *
 Q: How hard did you do that?
 A: * * * I can't say it was hard, but not hard. I can't reallyexplain it.
* * *
A: * * * I head-butted her three more times in the head,* * *
 A: Well, I had head-butted her three more times. I head-buttedher once on top of the head and she — she held her head down andI head-butted her two more times in the back.
 Q: That's your head hitting her head?
 A: Yes, it is.
 Q: How hard did you do that?
 A: That I couldn't say because I was drunk. I know it was hardbecause by that time I was angry.
* * *
A: * * * I kicked her twice on — on her right side.
 Q: What did you kick her with?
 A: My foot.
 Q: Did you have any shoes on?
 A: I believe I did, yes. * * *
 Q: Okay. Uhm, how hard did you kick her?
 A: Probably hard enough to bruise.
Trial Trans. p. 349-357.
 {¶ 28} In sum, in reviewing the totality of the evidence, we cannot conclude that the trial court clearly lost its way or created a manifest miscarriage of justice in affirming Terry's felonious assault conviction. Furthermore, after viewing the entire record and the evidence in the light most favorable to the State, we can say that a rationale trier of fact could have found the essential elements of the felonious assault proven beyond a reasonable doubt. Accordingly, Terry's second and third assignments of error are overruled.
 {¶ 29} Therefore, the trial court's September 23, 2005 Judgment of conviction and sentence entered in the Court of Common Pleas, Seneca County, Ohio is affirmed.
Judgment affirmed.
 Rogers and Cupp, JJ., concur.