OPINION
{¶ 1} Appellant, Carolyn A. White ("appellant"), filed this appeal seeking reversal of a judgment by the Franklin County Court of Common Pleas convicting her on charges of aggravated burglary, kidnapping, carrying a concealed weapon, and possession of criminal tools. For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} On the morning of April 1, 2005, Jodi Schlosser ("Ms. Schlosser") was living in Galloway with Terry Green ("Green") and her children from her previous marriage to *Page 2 
Scott Schlosser. Ms. Schlosser was getting ready to leave the house to baby sit her sister's children. Green had briefly left the house with his son, who was staying with him during spring break, to check on his mother's house, and to go to the store to get coffee and a newspaper. Ms. Schlosser's children were staying with their father, Scott, at the time.
 {¶ 3} Ms. Schlosser was in an upstairs bedroom in the house when she saw a black male wearing gloves enter the room, pointing a gun at her. The man told her to lie down on the bed, and that he would not hurt her if she remained quiet. He placed duct tape over her eyes and mouth; the tape over her eyes did not completely obscure her vision. The roll of duct tape that was used was later recovered from the bedroom. The man walked Ms. Schlosser out of the house through the garage, holding the gun to her head the whole time.
 {¶ 4} Once outside on the driveway, Ms. Schlosser saw a red Tahoe with dark-tinted windows parked on the street in the area between her house and the neighboring house. She recognized the Tahoe because she had seen the vehicle parked next to her car outside her place of employment the previous day. At that point, Ms. Schlosser pulled the duct tape from her eyes and mouth, dropped to the ground, and started screaming. Ms. Schlosser's neighbor, Julia Bricker, came out of her house in response to the screaming. The male pointed the gun at her, then back at Ms. Schlosser, and then fled on foot in the direction of Hall Road. The Tahoe had pulled away at some point during the commotion.
 {¶ 5} Julia Bricker's husband, John, had called 911, and Ms. Schlosser went into the Brickers' house to talk to the 911 operator. Ms. Schlosser and Julia Bricker each saw *Page 3 
the red Tahoe driving back through the area at this time. After talking to the police, John Bricker contacted Green on his mobile phone to tell him what had happened. Upon being told that there was a red Tahoe involved, Green remembered that he had seen a red Tahoe driving by the house two or three times the previous evening while he and his son were shooting basketball. Green testified that appellant was driving the Tahoe at that time.
 {¶ 6} Shortly after that, Green saw a red Tahoe in the parking lot of the CVS at the intersection of Hall Road and Norton Road. Green directed his son to get out of the car, and then drove into the CVS parking lot and stopped behind the Tahoe. Green saw a black male run across a field to the parking lot, and yelled at the man, who then showed Green a gun. The driver of the Tahoe opened the passenger door, and the male jumped in. Green then rammed the Tahoe with his vehicle, and the Tahoe pulled out of the parking lot. Green followed in his vehicle and called 911. At one point, the Tahoe stopped, and the male passenger waved the gun at Green out the window before the Tahoe began moving again. Eventually, Green bumped the Tahoe again, and the Tahoe got caught on the road's guardrail shortly before the police arrived.
 {¶ 7} Danny Burns, an auxiliary officer with the Harrisburg Police Department, was one of the first police officers on the scene. Burns testified that, as he and Harrisburg Police Sergeant Scott O'Neal arrived, they saw the Tahoe ahead of them, with a male driver, and saw appellant walking toward them away from the Tahoe. Appellant told them someone had attempted to carjack her vehicle. Burns characterized appellant's demeanor as calm and relaxed. *Page 4 
 {¶ 8} Columbus Police Department crime scene Detective William Snyder testified that he searched the Tahoe. Detective Snyder recovered a loaded handgun from the Tahoe. He also noted that the back seat had been completely covered with bed sheets and blankets. Additional rolls of duct tape and heavy-duty trash bags were also found in the Tahoe.
 {¶ 9} The black male who assaulted Ms. Schlosser and who was arrested at the scene where the Tahoe finally stopped was ultimately identified as Bartallen Brown ("Brown"). Brown testified that on March 31, 2005, he was waiting at a bus stop at the corner of Parsons Avenue and Broad Street when appellant, who he said he had never met, pulled up and asked him to get in her vehicle, stating that she had a proposition for him. Appellant told Brown about problems she was experiencing because of Ms. Schlosser, who she identified as her boyfriend's ex-wife. Appellant offered to pay Brown in return for his assistance in getting Ms. Schlosser to get into appellant's vehicle, stating that she wanted Ms. Schlosser to make a telephone call for her. Brown also testified that appellant subsequently said she wanted to hurt Schlosser.
 {¶ 10} Appellant and Brown drove to a number of locations that day, where they purchased gloves, hand sanitizer, trash bags, and duct tape. At that time, there were no bed sheets or blankets covering the back seat of the Tahoe. The two also drove to an ATM where appellant withdrew $600 that she said she would give Brown later, and also drove to Ms. Schlosser's place of employment and to the area around Ms. Schlosser's house. That night, Brown went to a friend's house to retrieve a handgun, although Brown stated he did not believe the gun worked. The next morning, appellant picked Brown up, *Page 5 
and Brown noticed that the back seat was now covered. Brown testified that appellant told him he should go into Ms. Schlosser's house and bring her out to the Tahoe.
 {¶ 11} Scott Schlosser testified that he had met appellant some time in November or December of 2004. The two dated for a brief period, until Schlosser broke up with her. Appellant continued to contact him for some time thereafter, but ultimately the relationship was completely ended.
 {¶ 12} Appellant was ultimately indicted for aggravated burglary with a gun specification, kidnapping with a gun specification, possession of criminal tools, and carrying a concealed weapon. Appellant was also charged with conspiracy to commit murder for an alleged attempt to hire a hit man to kill Ms. Schlosser while appellant was incarcerated awaiting trial. Appellant pled not guilty on all of the charges, and filed a Request for Bill of Particulars from the state, seeking to have the state specify whether appellant was being charged as an aider and abetter, or as an actual perpetrator. The bill of particulars provided by the state in response did not refer to appellant as a complicitor in the charges, but was worded in terms of the principal offender. During opening statements in the jury trial, the state made it clear that it was proceeding on a theory that appellant aided and abetted the commission of the crimes charged, but was not the principal offender. Appellant moved for a mistrial, arguing that the state's theory did not comport with the bill of particulars that had been provided. The trial court overruled the motion for mistrial.
 {¶ 13} After a jury trial, appellant was acquitted on the charge of conspiracy to commit murder, and convicted on all of the remaining charges, including the gun specifications. On Count 1, the charge of aggravated burglary, appellant was sentenced *Page 6 
to a term of five years incarceration. On Count 2, the charge of kidnapping, appellant was sentenced to a term of ten years incarceration, plus three years incarceration for the gun specification. These sentences on Counts 1 and 2 were ordered to be served consecutively. On Count 3, the charge of possession of criminal tools, appellant was sentenced to a term of 12 months incarceration. On Count 4, the charge of carrying a concealed weapon, appellant was sentenced to a term of 18 months incarceration. The sentences on Counts 3 and 4 were ordered to be served concurrently with each other, but consecutively to the sentences on Counts 1 and 2.
 {¶ 14} Appellant filed this appeal, alleging four assignments of error:
 I. Defendant was deprived of a fair trial when the State was permitted after providing a Bill of Particulars that she was the actual perpetrator vis a vis aider and abetter to proceed on the theory of being an aider and abetter, and the Defendant's Motion for Mistrial when this was revealed in the opening statement was overruled.
 II. The Trial Court erred in sentencing the Defendant to the maximum sentence for an F-1 for kidnapping given the fact that it was undisputed that the victim was released unharmed.
 III. The conviction of the Defendant for carrying a concealed weapon in violation of § 2923.12 of the Ohio Revised Code supported was not [sic] by the quantity of evidence required by law and was against the manifest weight of the evidence.
 IV. The Defendant was deprived of her rights to due process of law and equal protection under the Constitution of the United States and the State Constitution. Further given the recent Supreme Court decision of State v. Foster 109 Oh. St. 1, 3d [sic] 2006-Oh. 856 [sic], removing the statutes granting the Court authority to impose consecutive sentences under circumstances such as this the [sic] Court lacked jurisdiction to impose consecutive sentences on the counts in question. *Page 7 
 {¶ 15} In her first assignment of error, appellant argues that she was denied a fair trial after the trial court overruled her motion for mistrial when the state outlined a theory of the case in opening statements that did not comport with the bill of particulars the state had provided to appellant. Specifically, the bill of particulars spoke in terms of appellant's conduct as constituting the actual offenses charged, rather than complicity to commit those offenses, but the state's actual case was based on complicity
 {¶ 16} R.C. 2923.03 sets forth the offense of complicity to commit a criminal offense. The statute provides that, "[a] charge of complicity may be stated in terms of this section, or in terms of the principle offense." R.C. 2923.03(F). Ohio courts have recognized that, "[t]his provision adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." State v. Hand, 107 Ohio St.3d 378, 404, 2006-Ohio-18,840 N.E.2d 151. Because of this provision, courts have held that a criminal defendant is not entitled to reversal where a bill of particulars was worded in terms of the principal offender, but the defendant is tried on the basis of complicity. State v. Herring, 94 Ohio St.3d 246,2002-Ohio-796, 762 N.E.2d 940.
 {¶ 17} In addition, Crim.R. 7(E) specifies that a bill of particulars "may be amended at any time subject to such conditions as justice requires." Crim.R. 7(D) further provides that a court may amend a bill of particulars "at any time before, during, or after a trial * * * provided no change is made in the name or identity of the crime charged." Thus, even if R.C. 2923.03 would have required that the bill of particulars specify that appellant was charged with complicity rather than as the principal offender, the proper remedy would not have been a mistrial, but an amendment to the bill of particulars. *Page 8 
 {¶ 18} Finally, we find that appellant suffered no prejudice as a result of the state being allowed to proceed on a theory of complicity. See Herring, supra. Appellant makes the bare argument that she would have totally changed the approach taken to the case. However, appellant does not specify how the defense approach would have changed, and it is clear from the record that appellant was not surprised that the state was proceeding on a theory that she was complicit in the offenses committed by Brown.
 {¶ 19} Consequently, appellant's first assignment of error is overruled.
 {¶ 20} In her second assignment of error, appellant argues that the trial court erred when it treated her conviction as a first-degree felony for sentencing purposes because the evidence showed that the victim of the offense was released in a safe place unharmed. R.C.2905.01(C) provides that kidnapping is a second-degree felony if the victim was released in a safe place unharmed. This provision is not an element of the offense, but rather is an affirmative defense, and therefore the defendant is required to plead and prove the defense.State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315. The record shows that appellant never requested a jury instruction on the affirmative defense, and instead raised the issue for the first time at the sentencing hearing. Consequently, appellant waived all but plain error.
 {¶ 21} Plain error exists only where it is clear that, but for the error, the result of the trial would have been different. State v.Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215. Based on the evidence in the record, appellant did not establish the defense that the victim was released in a safe place unharmed. Ms. Schlosser was being led toward appellant's Tahoe with Brown holding a gun to her head. Fearing the consequences that may have occurred if she allowed herself to be placed in the Tahoe, *Page 9 
Ms. Schlosser dropped to the ground and began screaming. Ms. Schlosser was clearly not in a safe place at that point, because Brown was standing over her with a gun in his hand. When Ms. Schlosser's neighbor came out in response to Ms. Schlosser's screaming, appellant and Brown each fled the scene, appellant in her Tahoe and Brown on foot. Based on this evidence, it is much more accurate to characterize this action as an escape by Ms. Schlosser, not as a release. When the victim of a kidnapping escapes of her own accord, a defendant cannot establish the affirmative defense that the victim was released unharmed. See State v.Stadmire, Cuyahoga App. No. 81188, 2003-Ohio-873. Thus, we find no plain error occurred regarding appellant's kidnapping conviction being sentenced as a first-degree felony rather than a second-degree felony.
 {¶ 22} Appellant suggests that the issue of the sentencing on her kidnapping conviction may be affected by the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, in which the court found a number of provisions of Ohio's sentencing law unconstitutional, including provisions that called for sentencing based on facts found by the judge rather than the jury.Foster is not applicable to the provision in R.C. 2905.01(C) reducing kidnapping from a first-degree felony to a second-degree felony when the victim is released in a safe place unharmed because the provision is an affirmative defense that acts to reduce the possible sentence, rather than as a fact that acts to increase the sentence. Moreover, appellant would have had the right to have the jury decide whether the victim had been released in a safe place unharmed if appellant had requested an instruction, and the facts had warranted the instruction.
 {¶ 23} Therefore, we overrule appellant's second assignment of error. *Page 10 
 {¶ 24} In her third assignment of error, appellant argues that her conviction for carrying a concealed weapon was not supported by sufficient evidence, and was against the manifest weight of the evidence.
 {¶ 25} As set forth in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, when reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S. Ct. 2781, 61 L.Ed.2d 560.
 {¶ 26} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 27} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction *Page 11 
must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, at paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction."Thompkins, supra, at 387.
 {¶ 28} Appellant argues that there was no evidence offered establishing that she ever had the gun in her possession, nor was any evidence offered that she told Brown to get or use the gun he had. As discussed above in connection with appellant's first assignment of error, the state's case against appellant was based on complicity, not on a theory that appellant was the principal offender. Therefore, whether she ever actually had the gun in her possession is irrelevant.
 {¶ 29} In addition, contrary to appellant's claim, evidence was offered that appellant told Brown he needed to get a gun. Brown testified that it was appellant's idea for him to get a gun to take into the house with him. Brown also testified that appellant told him Ms. Schlosser was "feisty" and that he might need some protection against her. In addition, Detective Lowell Smittle testified that during an interview conducted as part of the investigation, appellant said she knew Brown had a gun when she drove him to Ms. Schlosser's house.
 {¶ 30} Based on this evidence, a rational trier of fact could have found appellant guilty of carrying a concealed weapon because she acted in concert with Brown in the commission of the offense. See State v.Tait, Cuyahoga App. No. 82262, 2003-Ohio- *Page 12 
5638. Nor can we say that the evidence weighed so heavily against appellant's guilt that the jury must have clearly lost its way. Therefore, we overrule appellant's third assignment of error.
 {¶ 31} In her fourth assignment of error, appellant argues that the trial court had no authority to impose consecutive sentences based on the Ohio Supreme Court's decision in Foster, supra. Appellant argues that the Foster court struck down the general statutory provision allowing for imposition of consecutive sentences, the only remaining statutory provisions allowing imposition of consecutive sentences are those provisions that call for imposition of consecutive sentences in specific cases, such as mandatory sentencing on gun specifications.
 {¶ 32} However, the Foster court specifically recognized that its remedy severing those statutory provisions calling for sentencing based on judicial fact finding left trial courts with extremely broad authority in fashioning sentences. The court stated, "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."Foster, supra, at paragraph seven of the syllabus. Based on this broad authority, the sentence imposed by the trial court in this case was within the court's authority. Therefore, appellant's fourth assignment of error is overruled. *Page 13 
 {¶ 33} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 PETREE and BROWN, JJ., concur. *Page 1