[Cite as *State v. Bowman*, 2012-Ohio-1355.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97165**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JERMAINE BOWMAN

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546673

**BEFORE:** S. Gallagher, J., Jones, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** March 29, 2012

**ATTORNEY FOR APPELLANT**

Richard Agopian
The Hilliard Building
1415-1419 West 9th Street
Second Floor
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Oscar E. Albores
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant, Jermaine Bowman, appeals his conviction and sentence from the Cuyahoga County Court of Common Pleas. For the reasons stated herein, we affirm.

{¶2} On February 9, 2011, Bowman was indicted on charges of kidnapping (R.C. 2905.01(A)(3)) and felonious assault (R.C. 2903.11(A)(2)), each with a notice of prior conviction and a repeat violent offender specification. The indictment later was amended to include the name of the victim.

{¶3} Bowman pled not guilty to the charges, and he was found competent to stand trial. After Bowman waived his right to a jury trial and rejected a plea offer, the case proceeded to a bench trial.

{¶4} The victim testified to an incident that occurred on January 25, 2011. The victim left work around 2:30 a.m. and was walking to a bus stop at West 3rd Street and St. Clair Avenue in Cleveland. A man wearing a red "hoodie" and a baseball cap approached her from behind. The man asked the victim for her name and asked if he could walk with her. He appeared intoxicated and was making the victim feel uncomfortable. The victim asked the man to stop following her, but he continued talking to her and following her.

{¶5} The victim was on the phone with her boyfriend and relayed to him what was occurring. She tried to walk away, but the man persisted in following her. She told him to stop following her or she would call the police. She headed into the bus shelter

where other people were waiting. The man then walked into the bus shelter, held up a knife, and said, "which one of you guys wants to die tonight?" The man grabbed the victim by her coat and charged at her with the knife. As the man was swinging the knife, the victim pulled back to avoid getting cut and she began screaming for help. A woman who was at the bus stop pulled the victim away from the man.

{¶6} The victim began to run and jumped over a gate. The man chased her. The victim ran to another bus stop and stopped a bus. The bus driver called the police.

{¶7} When the police arrived, they walked the victim over to the bus stop where the incident began. After the victim gave a description of the man, the officer held up a red hoodie and a baseball cap and asked if the items were what the man had been wearing. The victim responded yes. She also identified the knife. The officer then said, "I think we got him in the car. We're going to walk up to the car and you tell me if that's him or not." The victim looked in the police car and identified the suspect as the correct individual.

{¶8} At trial, the victim testified the defendant was the person that she identified to the police. She also identified the knife that was used during the incident.

{¶9} Officer Daniel Smith responded to the scene. He saw the female victim crying and noticed a man standing in front of the bus stop. Officer Smith stated that a bus driver approached him and told him the man was the person who was threatening the victim. At trial, the officer identified the defendant as the man who was at the bus stop.

{¶10} The officer knew Bowman, who had assisted the officer with solving an assault case a few days earlier. The officer described Bowman as wearing a red T-shirt and being extremely intoxicated. The police found a can of Four Loko, a type of alcohol, in front of the bus stop and a Swiss Army knife lying behind the bus stop bench.

{¶11} Detective Gregory Hunter conducted a follow-up investigation. He took the victim's statement. He did not order an examination for fingerprints on the knife. With regard to the specifications in the indictment, evidence was presented establishing Bowman's prior conviction for aggravated robbery.

{¶12} Bowman admitted that he was sitting at the bus stop, was drinking Four Loko, was intoxicated, and had a knife on him. He stated he was wearing a brown leather coat, a gray T-shirt, blue jeans, and wheat-colored Timberland boots. This was consistent with his booking photo. He admitted he also was wearing a baseball cap.

{¶13} Bowman indicated that he is a paranoid schizophrenic and had not been taking his medication. He conceded that his condition has led him into physical altercations. He stated that a female was at the bus stop with another male, that they began laughing, and that he believed they were conspiring against him. Bowman then stated, "I'm ready to die." He claimed that the female walked off and the other male said, "go on man. I ain't about to fight you. Go home."

{¶14} Bowman denied touching the female, swinging a knife at her, or going after her. He testified that he did not witness the female argue or fight with anyone that night.

He admitted the Swiss Army knife introduced at trial was his. He claimed it had fallen out of a hole in his coat pocket. He stated that he did not hurt anyone.

{¶15} The court found Bowman guilty of kidnapping and felonious assault, each with the notice of prior conviction and repeat violent offender specifications. The court found the charges were allied offenses that merged for sentencing. The state elected to proceed on the kidnapping count. The court imposed a prison term of five years and mandatory postrelease control of five years.

{¶16} Bowman timely filed this appeal. He raises four assignments of error for our review. His first assignment of error challenges his conviction for kidnapping, a first-degree felony, as being against the manifest weight of the evidence. He argues that because the victim ran away unharmed, the charge should have been a second-degree felony.

{¶17} When reviewing a claim challenging the manifest weight of the evidence, the test is as follows:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d

380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶18}** Under R.C. 2905.01(A)(3), kidnapping is defined as follows:

(A) No person, by force, threat, or deception * * * shall * * * restrain the liberty of the other person, for any of the following purposes:   * * * (3) To terrorize, or to inflict serious physical harm on the victim or another[.]

**{¶19}** Kidnapping under this section is a felony of the first degree; however, if the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree.   R.C. 2905.01(C)(1).   The mitigating provision is not an element of the crime, but rather, the defendant must plead and prove the assertion as an affirmative defense.   *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 233.

**{¶20}** In this case, Bowman failed to establish that the victim was released in a safe place unharmed.   Though the victim herein may have been unharmed, the evidence does not show that the offender released the victim.   Rather, the offender grabbed the victim by her coat and was swinging a knife at her.   She escaped after being pulled away from the offender, who then ran after her.   "When the victim of a kidnapping escapes of her own accord, a defendant cannot establish the affirmative defense that the victim was released unharmed."   *State v. White*, 10th Dist. No. 06AP-607, 2007-Ohio-3217, ¶ 21, citing *State v. Stadmire*, 8th Dist. No. 81188, 2003-Ohio-873, ¶ 50.

**{¶21}** Furthermore, upon our review of the entire record, we cannot say the conviction was against the manifest weight of the evidence.   The victim testified that the

offender held up a knife and said, "which one of you guys wants to die tonight." He then grabbed the victim by her coat and charged at her with the knife. The victim pulled back to avoid getting cut, screamed for help, and was pulled away from his grasp. Though Bowman denied such actions, Bowman admitted to being present, being intoxicated, and having a knife on his person. He also indicated he suffers from paranoid schizophrenia and has been in numerous physical altercations. Both the bus driver and the victim identified Bowman as the offender. Though Bowman denied being the offender, he did not witness the victim fight with anyone else. Because we do not find the conviction was against the manifest weight of the evidence, Bowman's first assignment of error is overruled.

{¶22} Bowman's second assignment of error argues he was denied effective assistance of counsel and a fair trial. He claims that the eyewitness identification was unduly suggestive and that his counsel should have filed a motion to suppress. He further argues there were numerous instances when counsel failed to object to inadmissible evidence; however, he fails to point to any instances in the record or to otherwise substantiate this argument.

{¶23} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial

scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. A party claiming his counsel was ineffective for failing to file a motion to suppress must show resulting prejudice. *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 17, citing *State v. Robinson*, 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3d Dist.1996).

{¶24} Bowman argues that he was identified by the victim after an unduly suggestive "show-up" in which the police officer stated, "I think we got him in the car." While a one-man show-up is inherently suggestive, the identification is still admissible when the circumstances show the identification is reliable. *State v. Jennings*, 7th Dist. No. 08-MA-181, 2009-Ohio-6536, ¶ 17, citing *State v. Sutton*, 10th Dist. No. 06AP-708, 2007-Ohio-3792, ¶ 38.

{¶25} In this matter, the victim identified the offender as wearing a red hoodie and a baseball cap and having a knife. She further indicated that he appeared intoxicated. Bowman was also identified by the bus driver, and the police officer described him as wearing a red T-shirt and being extremely intoxicated. While there were some inconsistencies as to the type of pants Bowman was wearing, the witnesses were testifying to the best of their recollection. A red hoodie, a baseball cap, and a knife were recovered by the police and identified by the victim before she was shown the suspect. She was taken to a police car at the scene and positively identified the suspect. Bowman conceded that he was present at the bus stop, that he had been wearing a baseball cap, and that the knife was his. He admitted he had been drinking and was intoxicated.

**{¶26}** The circumstances reflect that the victim's identification of Bowman was reliable, and therefore admissible, despite the suggestiveness in the identification procedure. Because Bowman has failed to demonstrate that a motion to suppress would have been granted or that he suffered any prejudice as a result of his counsel's performance, his ineffective assistance of counsel claim lacks merit. Therefore, we overrule Bowman's second assignment of error.

**{¶27}** Bowman's third assignment of error claims the trial court did not properly merge the allied offenses. Bowman essentially argues that the trial court should have sentenced him on each of the two counts before the state's election for merger. We disagree.

**{¶28}** Bowman relies on this court's decision in *State v. White*, 8th Dist. No. 92972, 2010-Ohio-2342, ¶ 62, where the panel indicated: "the sentencing judge must comply with Crim.R. 32(C) by announcing a sentence on all counts for which the defendant has been found guilty, including the allied offense." Because the Ohio Supreme Court has instructed otherwise, *White* is no longer applicable.

**{¶29}** In *State v. Whitfield*, the Ohio Supreme Court recognized that R.C. 2941.25(A) prohibits multiple punishments for the same conduct. 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 10. "[F]or purposes of R.C. 2941.25, a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis sic.) *Id*. at ¶ 12. Because there may be only one conviction under R.C. 2941.25(A), "[a] defendant may be indicted and tried for allied offenses of similar import,

but may be sentenced on only one of the allied offenses." *See id.* at ¶ 17. The state retains the right to elect which allied offense to pursue at sentencing. *Id.* at 20. Upon the state's election, the court is required to "merge the crimes into a single conviction for sentencing, * * * and impose a sentence that is appropriate for the merged offense." (Citation omitted.) *Id.* at ¶ 24. Although a defendant may not be punished for both allied offenses, the finding of guilt remains intact, both before and after the merger of allied offenses for sentencing. *Id.* at ¶ 27.

{¶30} In *State v. Johnson*, the Ohio Supreme Court held that the analysis of allied offenses of similar import under R.C. 2941.25 requires a court to determine whether both offenses can be committed by the same conduct and whether the defendant did commit the offenses by the same conduct. 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48. The determination is to be made prior to sentencing the defendant. *Id.* at ¶ 47.

{¶31} In *State v. Wilson*, the court recognized that the state's election and the merger of offenses precedes the imposition of sentence:

> Pursuant to [*State v.*] *Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, the trial court must accept the state's selection, merge the offenses accordingly for the purposes of sentencing, and impose a sentence that is appropriate for the remaining offense or offenses. *Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 18.

**{¶32}** In this case, the trial court determined that Counts 1 and 2 were allied offenses of similar import that merged for the purposes of sentencing. The state elected to proceed to sentencing on the kidnapping offense. The trial court sentenced Bowman to a prison term of five years with mandatory postrelease control of five years. Finding no error occurred, we overrule Bowman's third assignment of error.

**{¶33}** Bowman's fourth assignment of error asserts he was punished for exercising his right to trial. Bowman complains that he was sentenced to five years rather than two years when he rejected a plea bargain and elected to proceed to trial. It is well recognized that "a defendant is guaranteed the right to a trial and should never be punished for exercising that right for refusing to enter a plea agreement[.]" *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989).

**{¶34}** The record in this case reflects that the trial court ensured that Bowman was aware of his plea options and his right to go to trial. Bowman complained about his attorney's advising him of his plea options because Bowman wished to go to trial. The judge advised Bowman of the obligation to inform him of his plea options. The judge also advised Bowman that he did not have to take a plea, that the judge was fine with his choice, and that the judge was happy to have a trial in the case. The court appointed new defense counsel, and a new trial date was set. Before proceeding with trial, the court had the state place the plea offer on the record, which included the ability to plead to lesser counts. The court discussed the possible sentence that could be imposed upon the plea agreement, as well as the sentence that could be imposed if the case went to trial.

**{¶35}** Bowman elected to proceed with a bench trial and was found guilty of the charges. The court heard the testimony at trial and reviewed the evidence presented. After considering the nature of the offenses, Bowman's record for violent offenses, and his troublesome failure to stay med-compliant, the court did not find a minimum sentence to be appropriate. There is simply no indication in the record that the imposition of a five-year sentence was in retaliation for rejecting the plea offer or for exercising his right to trial. Accordingly, Bowman's fourth assignment of error is overruled.

**{¶36}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
COLLEEN CONWAY COONEY, J., CONCUR