[Cite as *State v. Miller*, 2013-Ohio-1651.]

[Please see vacated opinion at 2013-Ohio-1185.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98574**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JESSE MILLER, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-560247

**BEFORE:** Celebrezze, P.J., Rocco, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** April 25, 2013

**ATTORNEY FOR APPELLANT**

Mark DeFranco
Mark A. DeFranco Law Offices
55 Public Square
Suite 1600
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Nicole Ellis
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

ON RECONSIDERATION[1]

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant, Jesse Miller, Jr., appeals his convictions stemming from the assault and robbery of a female. He argues that his convictions are unsupported by sufficient evidence, are against the manifest weight of the evidence, that he was compelled to wear his jail clothes during trial, and that the state committed prosecutorial misconduct during closing arguments by vouching for the credibility of a witness and asking the jury to imagine themselves in the victim's position. After a thorough review of the record and law, we affirm appellant's convictions, but remand with instructions to vacate the sentences imposed on allied offenses the court merged at sentencing.

I. Factual and Procedural History

{¶2} Elizabeth Williams testified that on May 3, 2011, she was walking down Coarth Avenue in Cleveland, Ohio, toward a friend's house. She heard someone riding a bike up to her from behind and heard the cyclist shout at her, "I thought I told you not to be around here no more. I don't want you around here." She recognized the voice as that of "Mookie" or "Mook," someone she had issues with in the past. She testified that

---

[1] The original decision in this appeal, *State v. Miller*, 8th Dist. No. 98574, 2013-Ohio-1185, released March 28, 2013, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

at an earlier point in time, "Mook" had tried to grope her and she told him to leave her alone. He responded that he better not see her in the neighborhood again.

{¶3} Williams testified that the assailant rode the bike up to her, then got off of it, shouting at her. He put his left forearm around her neck and with his right hand, reached into her pockets and removed $47, shouting at her all the while. She testified that, after taking the money from her, the assailant retrieved a gun from behind him in his waistband and hit her in the face with the grip. She fell to the ground unconscious. She woke a short time later and saw him peddling away, and then he entered a house just down the street.

{¶4} Williams got up shaken and bloody and began banging on the doors of homes nearby for help. Odie Cooper answered his door to find Williams dripping blood all over his porch. He ushered her inside and gave her a towel and some ice. He also called 911.

{¶5} Police and paramedics arrived a short time later, and Williams was transported to the hospital. The cut just above her left eye was treated with 11 stitches — five applied inside the wound to deal with a piece of flesh that was removed by the blow, and six applied to her skin to properly close the wound. A CT scan also revealed fractured bones in her face.

{¶6} Officer Kevin Walker of the Cleveland police department was first to arrive. He found a badly bleeding and hysterical Williams. She told him that "Mook" or "Mookie" had hit her and had taken her money. Officer Walker generated a report that

indicated Williams did not allege that a gun was used, but that she was hit with an unknown hard object.

{¶7} Detective John Kraynik, also with the Cleveland police, was assigned to investigate the incident. He initially had a phone conversation with Williams where he learned that the individual who assaulted her went by the name of "Mook" or "Mookie." Det. Kraynik also reviewed a supplemental report that indicated the assailant was possibly known as "Kaliffe."

{¶8} Det. Kraynik ran those aliases through a computer database to attempt to determine the assailant's real identity. The database contained a match to appellant. Det. Kraynik constructed a photo lineup using six photographs. He arranged for Williams to view the photographs with a police officer who was unfamiliar with the case and did not know the identity of the suspect. Williams picked appellant's photograph from this array.

{¶9} Appellant was eventually arrested and charged with two counts of kidnapping, two counts of aggravated robbery, two count of felonious assault, and one count of having a weapon while under disability. The first six counts also included one- and three-year firearm specifications, repeat violent offender specifications, and notices of prior conviction. A jury trial commenced on May 29, 2012, on the counts of kidnapping, aggravated robbery, and felonious assault. The weapon while under disability charge, repeat violent offender specification, and prior conviction specification were tried to the bench. The three-day trial concluded in guilty verdicts on two first-degree felony

counts of kidnapping (R.C. 2905.01(A)(2) and (A)(3)), one first-degree felony count of aggravated robbery (R.C. 2911.01(A)(3)), and one second-degree felony count of felonious assault (R.C. 2903.11(A)(1)). The jury found appellant did not possess a gun, and therefore, found appellant not guilty of all gun specifications. The trial court found appellant guilty of the notice of prior conviction specification, but not guilty of the remaining matters tried to the bench.

{¶10} At sentencing, on June 6, 2012, appellant raised the merger of allied offenses, arguing that all the offenses should merge. The state agreed that the kidnapping, aggravated robbery, and felonious assault charges should merge. The court, in pronouncing sentence, indicated that the kidnapping counts merged with each other and with the aggravated robbery and felonious assault counts. The state elected to proceed with sentencing on the first kidnapping count. After reviewing appellant's lengthy criminal history, the court ordered him to serve a ten-year prison sentence for this count, but also imposed a ten-year sentence on the merged aggravated robbery count and an eight-year sentence on the merged felonious assault count. The court ordered all prison terms to be served concurrently to each other. The court waived fines and costs and informed appellant of postrelease control.

{¶11} Appellant then perfected a timely appeal raising four assignments of error:

I.      The trial court erred when it denied the motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence of serious physical harm beyond a reasonable doubt.

II.     The state committed prosecutorial misconduct by bolstering the credibility of the victim and asking the jury to place themselves in the victim's shoes during closing arguments.

III.    The trial court denied appellant the right to a fair trial by compelling him to wear his jail clothing and by failing to address the jury or give a limiting instruction.

IV.     Appellant's convictions are against the manifest weight of the evidence.

## II.  Law and Analysis

### A. Allied Offenses

{¶12} Appellant first argues that his convictions for kidnapping, aggravated robbery, and felonious assault are unsupported because the state failed to offer evidence of serious physical harm. Although not raised by the parties, it must be noted that the charges of aggravated robbery and felonious assault merged with the kidnapping charge for sentencing purposes and were inappropriately assigned sentences. When merging allied offenses, the trial court must consider them as if they were a single offense. Therefore, a sentence may only be imposed on the offenses that survive merger. "When a defendant has been found guilty of offenses that are allied offenses, * * * a trial court must merge the crimes into a single conviction and impose a sentence that is appropriate for the offense chosen for sentencing." *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17. "[F]or purposes of R.C. 2941.25, a 'conviction' is the combination of a guilt determination and a sentence or penalty." *Id.* "Because there may be only one conviction under R.C. 2941.25(A), '[a] defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the

allied offenses.'"   *State v. Bowman*, 8th Dist. No. 97165, 2012-Ohio-1355, ¶ 29, quoting

S*tate v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 17.

{¶13} Here, the trial court mistakenly imposed sentence on offenses the court

indicated merged.   Therefore, the trial court erred, and the case must be remanded so that

the trial court may vacate the sentences on those counts that the court merged at

sentencing.   Accordingly, only the conviction for kidnapping will be addressed in

appellant's first assignment of error.   *State v. Hoang*, 9th Dist. No. 09CA0061-M,

2010-Ohio-6054.   *See also Bowman*, 2012-Ohio-1355 (this court addressed only the

kidnapping conviction in a manifest weight challenge where the defendant was found

guilty of kidnapping and felonious assault, but the trial court merged the two offenses for

sentencing).

## B. Sufficiency

{¶14} Under Crim.R. 29, a trial court "shall not order an entry of judgment of

acquittal if the evidence is such that reasonable minds can reach different conclusions as

to whether each material element of a crime has been proved beyond a reasonable doubt."

 *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), at the syllabus.   "A

motion for judgment of acquittal under Crim.R. 29(A) should be granted only where

reasonable minds could not fail to find reasonable doubt."   *State v. Apanovitch*, 33 Ohio

St.3d 19, 23, 514 N.E.2d 394 (1987).   Thus, the test an appellate court must apply in

reviewing a challenge based on a denial of a motion for acquittal is the same as a

challenge based on the sufficiency of the evidence to support a conviction.

**{¶15}** The Ohio Supreme Court has set forth the test an appellate court should apply when reviewing the sufficiency of the evidence supporting a conviction:

> [T]he relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978).

**{¶16}** R.C. 2905.01(A)(2) defines kidnapping, as it relates to this case, as the restraint of one's liberty of movement by force, threat, or deception to facilitate the commission of any felony. The state alleged at trial that appellant did this to Williams in order to commit the felony offenses of aggravated robbery or felonious assault. Both of those predicate felonies require a showing of serious physical harm. R.C. 2911.01(A)(3); R.C. 2903.11(A)(1). Appellant claims the record lacks evidence of serious physical harm to the victim. This court disagrees.

**{¶17}** Serious physical harm is defined to mean any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶18} "The degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.'" *State v. Irwin*, 7th Dist. No. 06MA20, 2007-Ohio-4996, ¶ 37. Where a victim's injuries included "two black eyes, a broken nose, bruising and bleeding on her right temple, deep bruising to her upper body, and a mild concussion which caused vomiting and headaches[,]" the Second District found sufficient evidence of serious physical harm. *State v. Bootes*, 2d Dist. No. 23712, 2011-Ohio-874, ¶ 20.

{¶19} This court has also found sufficient evidence of serious physical harm in cases with similar injuries. *State v. Melendez*, 8th Dist. No. 97175, 2012-Ohio-2385, ¶ 14. There, this court affirmed its position that "when a victim's injuries are serious enough to cause the victim to seek medical treatment, it may be reasonably inferred that the force exerted on the victim caused serious physical harm." *Id*., citing *State v. Wyland*, 8th Dist. No. 94463, 2011-Ohio-455, ¶ 32; *State v. Walker*, 8th Dist. No. 52391, 1987 Ohio App. LEXIS 7570 (June 18, 1987).

{¶20} Williams testified that she was knocked unconscious by a blow to her head inflicted by appellant. She testified that she was bleeding significantly from a laceration on her face. Cooper testified appellant was bleeding significantly from her face and that

blood soaked through the towel he gave her. Officer Walker testified that Williams was covered with blood when he arrived on the scene. Williams testified that she received a number of stitches, including stitches inside the wound because the blow to her head had removed a chunk of flesh from her face. Her medical records indicate she received a total of 11 stitches and followed up with a plastic surgeon, although further treatment was deemed unnecessary. Williams also has a scar, which she pointed out to the jury while testifying.

{¶21} Appellant points to the testimony of Officer Jonathan Schafer of the Cleveland police department as evidence that Williams did not suffer serious physical harm. However, Officer Schafer, who interviewed Williams the day after the incident, could not recall her injuries. He did not testify that Williams had no injuries, as appellant intimates.

{¶22} Appellant argues this case is similar to *State v. Addison*, 8th Dist. No. 96514, 2012-Ohio-260. There, this court found the evidence presented at trial did not sufficiently demonstrate serious physical harm. *Id*. at ¶ 26. However, the result in *Addison* was due to the fact that the victim, "Anthony Brown[,] failed to testify against Addison and, because Anthony refused medical treatment at the hospital[.]" *Id*. at ¶ 28. In that case, the only evidence in the record of serious physical harm was photographs showing the victim and the testimony of the victim's brother.

> There was no evidence that Anthony suffered prolonged intractable pain, that he had any permanent disfigurement, or that the injury caused him substantial temporary incapacity. Anthony's refusal of medical treatment

deprives this court of any medical documentation of Anthony's alleged injuries.

*Id.* at ¶ 29-30.

**{¶23}** The present case is distinguishable because Williams testified that she was knocked unconscious by a blow to her head from a gun wielded by appellant. This is a temporary substantial incapacity. She further testified that she was taken to the hospital by ambulance where she received treatment for skull fractures and a cut to her face that required several stitches — a laceration from which she still has a scar — a permanent disfigurement. Serious physical harm has been established in this record.

**{¶24}** Appellant's conviction for kidnapping is supported by sufficient evidence. The rest of appellant's sufficiency arguments hinge on a lack of serious physical harm. Having found sufficient evidence of serious physical harm in the record, appellant's remaining arguments are likewise overruled.

### C. Manifest Weight

**{¶25}** Appellant also claims his conviction for kidnapping is against the manifest weight of the evidence. He points to alleged inconsistencies in Williams's testimony. This argument

> addresses the evidence's effect of inducing belief. [*State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541]. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the

conflicting testimony." *Id*. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

**{¶26}** Williams certainly had credibility issues. She acknowledged that she currently resided in prison on drug charges at the time of her testimony. Her prior criminal convictions were also used during direct and cross-examination. However, she never wavered in her description of the events of May 3, 2011, and the jury must have found that significant.

**{¶27}** Williams testified that she was assaulted that day by the person she knew as "Mook" or "Mookie" — a person she had known for a number of years. She picked appellant out of a photo array after those aliases were matched to appellant. Cooper witnessed the injuries to Williams shortly after they were inflicted and corroborated their severity. During the 911 call placed by Cooper, Williams can be heard in the background proclaiming "Mookie" was the individual that assaulted her.

**{¶28}** The record in this case does not clearly demonstrate that the jury lost its way in convicting appellant of kidnapping. Therefore, appellant's fourth assignment of error is overruled.

### D. Prosecutorial Misconduct

**{¶29}** Appellant next claims that, during closing arguments, the state committed prosecutorial misconduct by vouching for the credibility of Williams and by asking the jury to place itself in her situation.

"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). Prosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266, 269, 473 N.E.2d 768 (1984). The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

*State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149.

{¶30} However, no objection was raised during these comments, so this court must determine if the state's comments constitute plain error.

{¶31} To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. *See State v. Tichon*, 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (9th Dist.1995). Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell*, 75 Ohio St.3d 163, 166, 1996-Ohio-100, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.

{¶32} Here, the state went through Williams's testimony and opined that it found her story credible. The state also asked the jury to imagine themselves in Williams's position to explain why she avoided contact with Det. Kraynik for two months during the investigation of the incident. These issues must have been apparent to the trial court

because immediately following the state's initial closing arguments, the court gave the following instructions:

> Ladies and gentlemen, before [appellant] gives his closing argument, I have two instructions for you just briefly. One is which [sic] the Prosecutor and the Court do not vouch for the credibility of witnesses, all right? So credibility is your province solely, all right?
>
> So what anybody else thinks at this point does not matter. It is up to you. Does everybody understand that?
>
> In addition to that, ladies and gentlemen, I do not want you to put yourself in the position of the victim in this case, or anybody else.
>
> It is your decision to review the evidence and decide credibility and your perspective on this evidence, but I do not want you to put yourself in the position of the victim. Do you understand?

{¶33} In light of the trial court's instruction, which the jury is presumed to follow, it cannot be said that appellant's ability to receive a fair trial was compromised as he claims. *See State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623. The instruction given by the trial court was clear and specifically addressed the arguments appellant now makes on appeal. With only a bald assertion that the state's comments prejudiced appellant, and in light of the curative instruction given by the trial court, appellant has not demonstrated that plain error occurred that would necessitate a new trial. Therefore, appellant's second assignment of error is overruled.

E. Clothing of the Accused

**{¶34}** In his third assignment of error, appellant claims that he did not receive a fair trial because he was compelled to wear his jail uniform rather than street clothes during trial.

**{¶35}** There is no basis in the record to support this assigned error. The trial court put forth an order the day before trial that appellant was to be dressed in normal clothes for trial. Appellant refused to change his clothes and was satisfied with his appearance. The court offered to continue trial so that appellant could change, but appellant again refused. There is no appealable issue here. Accordingly, this assignment of error is overruled.

### III. Conclusion

**{¶36}** Appellant's conviction for kidnapping is supported by sufficient evidence and is not against the manifest weight of the evidence. The alleged instances of prosecutorial misconduct during closing arguments do not rise to the level of plain error, especially in light of the limiting instruction given by the trial court after the prosecutor's statements. Also, appellant's informed decision to remain in his jail uniform during trial cannot seriously be argued here where the trial court counseled appellant on the importance of wearing street clothes and allowed appellant time to change clothes. When appellant refused such an offer, he invited any resultant harm. However, the trial court erred when imposing sentence on offenses that it merged. The court must vacate those sentences.

**{¶37}** This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KENNETH A. ROCCO, J., and
TIM MCCORMACK, J., CONCUR