[Cite as *In re E.B.*, 2018-Ohio-1683.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

IN RE:

        CASE NO.  2-17-21

    E.B.,

ADJUDICATED DELINQUENT CHILD        **O P I N I O N**


**Appeal from Auglaize County Common Pleas Court**
**Juvenile Division**
**Trial Court No. 2017 DEL 140**

**Judgment Affirmed**

**Date of Decision:  April 30, 2018**


**APPEARANCES:**

    *Rob C. Wiesenmayer, II* **for Appellant**

    *Nicholas A. Catania and Andrew J. Hinders* **for Appellee**

**SHAW, J.**

{¶1} Appellant, E.B., appeals the October 2, 2017 judgment of the Auglaize County Court of Common Pleas, Juvenile Division, committing her to the custody of a juvenile detention center for a period of 30 days, with 20 days suspended, and placing her on community control and intensive probation for an indefinite period of time up to age 21, following her adjudication as a delinquent child for her conduct comprising the offense of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree, if committed by an adult. On appeal, E.B. argues that the Mercer County Juvenile Court's adjudication of her as a delinquent child was not supported by sufficient evidence and was against the manifest weight of the evidence. E.B. also claims that she received ineffective assistance from her trial counsel.

*Adjudication in Mercer County*

{¶2} On January 9, 2017, a complaint was filed in Mercer County Juvenile Court was filed alleging E.B. to be a delinquent child based upon allegations that she knowingly committed serious physical harm to the victim, L.M., also a minor, by striking L.M. in the head causing her to suffer from a concussion, lacerations, bruises and eye injuries. The complaint specified this allegation as Count One, Felonious Assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree, if committed by an adult. The complaint also alleged under Count Two that

E.B. did knowingly obtain or exert control over property of another, without the consent of the owner or person authorized to give consent, with the property having a value of less than a thousand dollars, constituting the offense of Theft, in violation of R.C. 2913.02(A), a misdemeanor of the first degree, if committed by an adult. The allegations in the complaint arose from an altercation between E.B. and L.M. in a Walmart parking lot in Celina, Ohio on December 2, 2016.

{¶3} On January 23, 2017, E.B. appeared in court with her parents, where she was advised of her rights and the possible penalties and a denial was entered on her behalf.

{¶4} On April 18, 2017, E.B. filed a motion requesting the Mercer County Juvenile Court to determine the admissibility of cell phone video, which purportedly depicted the incident between E.B. and L.M. and was being proffered as evidence by the prosecution. The Mercer County Juvenile Court subsequently held a hearing on the matter and based upon the testimony presented, determined the video to be authenticated pursuant to Evid.R. 901, and permitted it to be used as evidence during the adjudicatory hearing. (See Doc. No. 1-HH).

{¶5} On July 10, 2017, the matter proceeded to trial. Several witnesses testified for both sides, including L.M.'s pediatrician who testified to the causes and nature of her injuries, and the cell phone video was presented over E.B.'s objection. At the conclusion of the evidence, the Mercer County Juvenile Court found beyond

a reasonable doubt E.B. to be a delinquent child on the grounds that she knowingly caused serious physical harm to L.M., to wit-felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree, if committed by an adult. The trial court did not find that the evidence supported a finding beyond a reasonable doubt that E.B. committed theft of L.M.'s property and dismissed Count Two of the complaint. The Mercer County Juvenile Court transferred the case to Auglaize County, where E.B. was a resident, for disposition.

*Disposition in Auglaize County*

{¶6} On September 28, 2017, E.B. appeared with her parents and legal counsel before the Auglaize County Juvenile Court for disposition of the case. The Auglaize County Juvenile Court heard closing arguments from each side and reviewed a confidential file containing reports of E.B.'s conduct since the December 2, 2016 incident, which contained indicia of E.B.'s continued poor decision making and lack of progress in academics at school.

{¶7} As part of disposition, the Auglaize County Juvenile Court committed E.B. to the legal custody of the Ohio Department of Youth Services ("DYS") for institutionalization for an indefinite term consisting of a minimum of one year and a maximum period not to exceed her attainment of age 21. However, the Auglaize County Juvenile Court suspended the DYS commitment, and instead committed her to the custody of a juvenile detention center for a period of 30 days, with 20 days

suspended, and placed her on community control and intensive probation for an indefinite period of time up to age 21, subject to numerous terms and conditions, which were also explicitly set forth in the court's October 2, 2017 judgment entry.

{¶8} E.B. filed this appeal, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN ADJUDICATING THE MINOR CHILD DELINQUENT AS THERE WAS NOT A SUFFICIENT AMOUNT OF EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE STATE HAD ESTABLISHED ALL THE ELEMENTS OF R.C. § 2903.11(A)(1) BEYOND A REASONABLE DOUBT.**

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT'S DECISION ADJUDICATING THE MINOR CHILD DELINQUENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

### ASSIGNMENT OF ERROR NO. 3

**THE ATTORNEY APPOINTED TO REPRESENT THE MINOR CHILD IN THIS CASE DID NOT PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL.**

{¶9} For ease of discussion, we elect to address the first and second assignments of error together.

*First and Second Assignments of Error*

{¶10} In her first and second assignments of error, E.B. challenges the Mercer County Juvenile Court's adjudication of her as a delinquent child.

Specifically, E.B. claims that the trial court's adjudication was not support by sufficient evidence and was otherwise against the manifest weight of the evidence.[1]

*Standard of Review*

**{¶11}** The standard of review employed by this Court in determining whether a juvenile's adjudication as a delinquent child was supported by sufficient evidence is the same as the standard used in adult criminal cases. *In re Washington*, 81 Ohio St.3d 337, 339 (1998); *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 16. The relevant inquiry in reviewing a claim of insufficient evidence is whether " 'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, sufficiency of evidence is a "legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *In re D.M.*, 10th Dist. Franklin No. 15AP-763, 2016-Ohio-3270, ¶ 29, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52 (1997).

**{¶12}** Just as with the sufficiency of the evidence standard of review, the standard of review employed by this Court in determining whether a juvenile's

---

[1] Due to the fact that all of the assignments of error raise issues regarding the adjudication of E.B. as a delinquent child by the Mercer County Juvenile Court, we will refer to that court as the "trial court" in the analysis portion of the opinion.

adjudication as a delinquent child was against the manifest weight of the evidence is the same standard used in adult criminal cases. *State v. A.N.C.*, 12th Dist. Warren No. CA2017-02-012, 2018-Ohio-362, ¶ 9. While "sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. *See also Thompkins* at 387 ("Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence."). An appellate court must review the entire record, weighing the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

*Analysis*

{¶13} In the case *sub judice*, E.B. was adjudicated a delinquent child by reason of violating R.C. 2903.11(A)(1), which states as follows: "No person shall knowingly * * * [c]ause serious physical harm to another * * * ." The majority of the evidence presented at the adjudicatory hearing consisted of testimony from E.B.,

L.M., and several bystanders, as well as a cell phone video which recorded the incident. This evidence established that several teenagers were present at Walmart at approximately 10:30 p.m. on December 2, 2016, in Celina, Ohio, after a high school basketball game between Celina and St. Marys. L.M. was accompanied by B.S. who drove them to the store. E.B. was also present at the store with her then-boyfriend, E.G., and at least two other teenagers, L.N. and J.S.

{¶14} Even though the teenagers' testimonies varied to a degree regarding each individual's accountability giving rise to the altercation between E.B. and L.M., the facts distilled from the evidence indicated that L.M. and/or B.S. had exchanged words with E.B. over L.M.'s cell phone immediately prior to the incident occurring. B.S. and L.M. had at that point already left the store and were travelling to another location, when B.S. drove back to the store's parking lot to engage E.B.

{¶15} The cell phone video clearly depicts the subsequent episode in the Walmart parking lot, which shows E.B. standing next to the opened passenger side door of B.S.'s vehicle where L.M. is seated in the passenger seat. While being encouraged by the other teenagers standing around the vehicle, and aware of the incident being recorded, E.B. repeatedly tells L.M. to get out of the car. At one point, E.B. informs L.M. "if I have to pull you out, it's going to be worse. Like, you're going to be on the ground and give me an advantage." (State's Ex. C at 0:00:12). Despite L.M. remaining in the vehicle and telling E.B. to leave her alone,

E.B. continues to taunt L.M. by leaning down closer to where L.M. is sitting in the vehicle and telling her to "hit my face, please." (Id. at 0:01:30). The interaction escalates when E.B. leans into the vehicle inches away from L.M. as the bystanders continue to jeer. It appears from the video that L.M. puts her hand up in an attempt to push E.B. away and E.B. grabs L.M. The two become entangled in a physical struggle while L.M. remains seated in the vehicle. At that point, the video abruptly ends.

*Sufficiency: Serious Physical Harm*

{¶16} On appeal, E.B. maintains that the trial court's adjudication of her as a delinquent child by reason of committing felonious assault was erroneous because the prosecution failed to present sufficient evidence establishing that E.B. caused serious physical harm to L.M. Section 2901.01(A)(5) of the Revised Code defines "serious physical harm to persons" to mean any of the following:

> **(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;**
>
> **(b) Any physical harm that carries a substantial risk of death;**
>
> **(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;**
>
> **(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;**

**(e)   Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.**

R.C. 2901.01(A)(5).

{¶17} At the adjudicatory hearing, L.M. testified to her physical interaction with E.B. in B.S.'s vehicle.  L.M. recalled putting her hand up to protect her face from E.B. because the bystanders were telling E.B. to drag L.M. out of the car and hit her.  L.M. recalled at that point E.B. began to strike her and tried to remove her from the car.  L.M. described E.B. punching her and kneeing her in the head and pulling her hair during the altercation.   L.M. recalled E.B. pulling L.M.'s glasses off of her face and throwing them over the adjacently parked cars.  L.M. explained that she propped her feet against the door so that E.B. could not remove her from the vehicle and then B.S. drove away with the door open.

{¶18} L.M. admitted that she refused medical treatment at the scene, however, she explained that she visited the emergency room hours later, on the morning of December 3, 2016, with complaints of severe headaches and eye pain.[2] She returned to the emergency room on December 5, 2016, when her symptoms did not improve.  L.M. recalled that she was given medication for her headaches and was referred to her pediatrician, Dr. Aganon.

---

[2] Notably, Officer Tyler Meyers of the City of Celina Police Department, who responded to the incident, confirmed that L.M. appeared to have minor injuries and refused medical treatment at the scene, but nevertheless complained that her head hurt and later visited the emergency room.

{¶19} Dr. Efron Aganon also testified for the prosecution at the adjudicatory hearing. He recalled seeing L.M. on December 7, 2016, for severe headaches and eye pain. At that time, L.M. informed him that she had been punched and kneed in the head by another person on December 2, 2016. Dr. Aganon also reviewed the records from the emergency room, which mentioned head trauma, to assist him with diagnosing L.M. with having a concussion. He explained that he performed a Sport Concussion Assessment Test, or SCAT scan, and that L.M. had presented thirteen of the twenty-two symptoms.

{¶20} Dr. Aganon referred L.M. to an Ophthalmologist due to her complaints of pain in the periorbital region and to a Neurologist for the concussion. L.M. attended a concussion clinic eleven days after the incident and continued to report experiencing a great deal of pain. He recalled that L.M.'s symptoms worsened after testing was done. Dr. Aganon opined that L.M. suffered from some temporary substantial incapacity as a result of the concussion. (Doc. No. 38-C at 74). He explained that, with a concussion, symptoms can be exacerbated by activity, either physical or mental, and that the remedy is to allow the brain to rest. Therefore, he advised L.M. not to go to school and to refrain from movies, texting, reading, homework, and television, until she was re-evaluated.

{¶21} L.M. recalled missing two weeks of school and work immediately after the incident with E.B. She saw an eye specialist who gave her eye drops for

inflammation and swelling behind her eyes. L.M.'s testimony in this regard was corroborated by Dr. Aganon who stated that L.M. was diagnosed with traumatic iritis by the Ophthalmologist. L.M. stated that she continues to experience light sensitivity and headaches and has intermittent vision problems, all of which she did not have before the altercation with E.B.

**{¶22}** The prosecution's evidence demonstrated that L.M. suffered from prolonged periorbital pain and headaches, as well as a concussion, which involved L.M. having "some temporary, substantial incapacity." *See* R.C. 2901.01(A)(5); (Dr. Agnon's testimony, Doc. No. 38-C at 74). Many appellate districts, including this one, have found a concussion satisfies the serious physical harm threshold. *State v. Long*, 11th Dist. Lake No. 2013-L-102, 2014-Ohio-4416, ¶ 57; *State v. Burks*, 3d Dist. Seneca No. 13-05-36, 2006-Ohio-2142, ¶ 7, 22; *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 22-23. Moreover, "when a victim's injuries are serious enough to cause the victim to seek medical treatment, it may be reasonably inferred that the force exerted on the victim caused serious physical harm." *State v. Melendez*, 8th Dist. Cuyahoga No. 97175, 2012-Ohio-2385, ¶ 14.

**{¶23}** After reviewing the trial transcript and the evidence presented therein, we believe that the evidence of "serious physical harm" was established in the prosecution's case-in-chief such that reasonable minds could reach the conclusion

that sufficient evidence had been offered as to each material element of the crime. Therefore, E.B.'s first assignment of error is overruled.

*Manifest Weight*

{¶24} Turning to her second assignment of error, E.B. claims that the trial court's adjudication of her as a delinquent child for felonious assault was against the manifest weight of the evidence. Notably, E.B. does not raise any particular argument under this assignment of error, nor does she specifically cite to any portion of the record to support this position on appeal. Rather, E.B. summarily argues that her adjudication was against the manifest weight of the evidence. [3]

{¶25} However, in reviewing the cross-examination of the prosecution's witnesses by E.B.'s trial counsel and the evidence presented in her defense at the adjudicatory hearing, we can surmise that E.B. disputed she initiated the altercation with L.M., due to the fact that some of the defense witnesses testified to an acrimonious history between L.M. and E.B., which included harsh words exchanged over the phone immediately prior to the incident. E.B. also challenged the allegation that she caused L.M. serious physical harm, based on the fact that the cell

---

[3] Pursuant to App.R. 12(A)(2) this Court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). "The purpose behind the rule is to require the appellant to specifically identify the error the appellant claims occurred and the portion of the record that supports the claim of error. Courts of appeals 'cannot and will not search the record in order to make arguments on appellant['s] behalf.' " *Cook v. Wilson*, 10 Dist. Franklin No. 05AP-699, 165 Ohio App.3d 202, 2006-Ohio-234, citing *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 240 (7th Dist.2000). Nevertheless, in the interest of justice, we will address E.B.'s second assignment of error.

phone video did not clearly show E.B. using her knee to strike L.M. in the head, or any other contact with L.M., which E.B.'s contends, could cause serious physical harm. E.B. also calls into question L.M.'s credibility with respect to the recitation of her injuries and how they occurred at trial.

{¶26} Notwithstanding E.B.'s arguments, the trial court apparently accepted L.M.'s testimony which, if believed, demonstrated that E.B. knowingly struck her in the head and resulted in her suffering prolonged eye pain, headaches, and a concussion, all of which caused and/or continues to cause L.M "some temporary, substantial incapacity." *See* R.C. 2901.01(A)(5). As previously discussed, L.M.'s testimony with respect to the legitimacy of her injuries was corroborated by the testimony of Dr. Aganon. As for the nature of the incident between E.B. and L.M., the trial court found the cell phone video as well as testimony from L.M. and some of the bystanders credible, which indicated that L.M. did not want to engage E.B., but that E.B. nevertheless pursued and initiated a physical encounter with L.M., albeit at the behest of some of the other teenagers present.

{¶27} Specifically, the trial court stated the following when it announced its ruling and addressed E.B.:

> **[T]he court was disgusted at the friends who were surrounding the car, and egging [E.B.] on. And at times due to the laughter and to some of statements, I got the distinct impression that at the time there was a little playing to the camera and to the friends.**

> **Had you been scared, you could have called for help, you could have called your parents, you could have called a police officer instead of going to a car and issuing challenge after challenge.**
>
> **You have a duty if someone is trying not to fight you, to move back and you didn't. Your anger at [L.M.], or whatever was causing it, you didn't seem to be irrational, or emotionally angry, was more wanting to settle the score, and the fact that when you did that, that [L.M.] was injured.**

(Doc. No. 38-C at 131-32).

**{¶28}** In sum, the trial judge was free to weigh the evidence E.B. presented bearing on these issues, and to the extent it was not convincing, the trial court could assign the weight it deemed appropriate. After reviewing the record, we cannot conclude that the trier of fact lost its way and committed a manifest miscarriage of justice in adjudicating E.B. a delinquent child by reason of committing felonious assault. Accordingly, the second assignment of error is overruled.

*Third Assignment of Error*

**{¶29}** In her third assignment of error, E.B. claims that she received ineffective assistance of trial counsel because counsel failed: (1) to object to "the testimony of [L.M.'s] father" because "he was present in the courtroom and not separated from the proceedings;" (2) to object to L.M.'s testimony regarding how the cell phone video was received as "speculation;" and (3) to object to Dr. Aganon's testimony because there was no request for him to be deemed an expert by the court.

*Standard of Review*

**{¶30}** To establish an ineffective assistance of counsel claim, E.B. must show that her trial counsel's performance was deficient and that counsel's performance prejudiced her. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

**{¶31}** At the outset, we note that " 'the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.' " *State v. Fears*, 86 Ohio St.3d 329, 347 (1999), quoting *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988). A defendant must also show that he was materially prejudiced by the failure to object. *Holloway* at 244; *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 233. Additionally, tactical decisions, such as whether and when to object, ordinarily do not give rise to a claim for ineffective assistance. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶¶ 139-40.

**{¶32}** Moreover, despite E.B.'s summary assertions on appeal, the record reflects that, in addition to maintaining a physician-patient relationship with L.M.

prior to the altercation with E.B. and personally examining L.M. after the incident occurred, Dr. Agnon testified to the accepted practice of the methodology he used to diagnose L.M. with a concussion. He also testified to his career as a primary care physician specializing in pediatrics, which spanned decades and his Curriculum Vitae was admitted as exhibit.

{¶33} With respect to L.M.'s testimony regarding the delivery of the cell phone video from a friend, the record demonstrates that E.B.'s trial counsel filed a motion to determine the admissibility of the cell phone video, which resulted in a pre-trial hearing, where the trial court heard extensive testimony as to the origin and chain of custody of the video and ultimately determined the video to be admissible, thereby casting doubt on the success of an objection based upon "speculation" to L.M.'s testimony regarding the method of delivery of the video. Notably, E.B.'s counsel renewed his objection to the admissibility of the video at the adjudication, which was overruled by the trial court.

{¶34} Finally, there is no indication in the record that that L.M.'s father testified, therefore E.B.'s complaint on appeal regarding a lack of separation of witnesses appears to be unsubstantiated. Rather, the record suggests that E.B.'s father was present during the course of the proceedings, despite providing testimony in her defense.

**{¶35}** Even assuming *arguendo* that the complained of issues on appeal were error, E.B. has not shown how the result of her adjudication would have been different. "We indulge in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. White*, 15 Ohio St.2d 146, 151 (1968). In other words, E.B. has not shown that the trial court relied on anything other than relevant, material, and competent evidence in reaching its adjudication determination. Accordingly, the third assignment of error is overruled.

**{¶36}** Based on the foregoing, the assignments of error are overruled and the judgment is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**