[Cite as *State v. Rogers*, 2018-Ohio-3495.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105879**


**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RODERICK ROGERS**

DEFENDANT-APPELLANT


**JUDGMENT:**
AFFIRMED


Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-609490-A

**BEFORE:** Celebrezze, J., E.A. Gallagher, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 30, 2018

**ATTORNEY FOR APPELLANT**

Edward F. Borkowski
P.O. Box 609151
Cleveland, Ohio 44109


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:     Kelly Needham
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Roderick Rogers, [1] brings this appeal challenging his convictions for aggravated robbery, felonious assault, and having weapons while under disability. Specifically, Rogers argues that the trial court erred in permitting the introduction of video evidence of the incident, he was denied his constitutional right to the effective assistance of counsel, his felonious assault conviction was not supported by sufficient evidence, and his convictions are against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} Rogers was charged for his involvement in a robbery that occurred on May 29, 2015. In Cuyahoga C.P. No. CR-16-609490-A, the Cuyahoga County Grand Jury returned a seven-count indictment on September 13, 2016, charging Rogers with (1) aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1); (2) aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(3); (3) felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(1); (4) felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2); (5) theft, a fifth-degree felony in violation of R.C. 2913.02(A)(1); (6) kidnapping, a first-degree felony in violation of R.C. 2905.01(B)(2); and (7) having weapons while under disability, a third-degree felony in violation of R.C. 2923.13(A)(2). Counts 1, 2, 3, 4, and 6 contained one- and three-year firearm specifications, notice of prior conviction specifications, and repeat violent offender specifications. Count 5 contained one- and three-year firearm specifications. Rogers was arraigned on September 16, 2016. He pled not guilty to the

---

[1] The record before this court contains two spellings of appellant's last name: Rogers and Rodgers. After the verdicts were returned by the jury and the trial court, appellant stated that his last name was spelled "Rodgers." (Tr. 462.)

indictment.

{¶3} A jury trial commenced on February 22, 2017. The notice of prior conviction and repeat violent offender specifications were tried to the bench. The following testimony and evidence was introduced at trial.

{¶4} The victim, Tyler King, had cashed a paycheck on the morning of May 29, 2015, and had approximately $1,700 on his person. King proceeded to shop at Tower City, after which he boarded a bus that traveled eastbound. As he was searching for his bus pass, King momentarily removed the cash that was in his pocket. King noticed two male passengers looking at him when he had the money in his hands.

{¶5} King exited the bus at the intersection of East 93rd Street and Union Avenue in Cleveland, Ohio. The two males that observed the money in King's possession exited the bus immediately behind King. As King crossed the street, the two males confronted him and ordered him to turn over the money.

{¶6} The encounter between King and the two males was recorded by Emanuel Williams who was inside a vehicle nearby. Video footage showed one of the assailants wearing a white shirt, purple hat, and shorts. This assailant punched and kicked King, lifted King off of his feet, and slammed him to the ground. The other assailant was wearing black clothing and brandishing a handgun. This assailant struck King in the head and fired two shots at him. The two assailants obtained King's money and shopping bag and fled the area on foot.

{¶7} The state presented evidence at trial identifying Rogers as the assailant wearing the white shirt, purple hat, and shorts. King identified Rogers as one of his assailants in a pretrial

photo lineup administered by Cleveland police detectives.[2]  However, King was only 50 percent certain of his identification at the time.  King identified Rogers at trial as the assailant wearing the white shirt, purple hat, and shorts.  King also testified at trial that the assailant wearing the white shirt had a distinct tattoo on his calf.  After Rogers lifted his pant leg in the courtroom, King identified Rogers's calf tattoo as the tattoo that he observed on the calf of the assailant wearing the white shirt.

{¶8} Williams's video recording of the robbery was introduced at trial.  At one point during the attack, the purple hat worn by the assailant in the white shirt fell to the ground, making it easier to see the assailant's face on the video recording.  Freeze frame pictures of the assailant wearing the white shirt were introduced at trial for comparison to Rogers's face.  Furthermore, a freeze-frame picture in which the calf tattoo of the assailant wearing the white shirt is readily visible was introduced by the state.

{¶9} Mark Reimer, a supervisor at the Salvation Army's Harbor Light housing facility,[3] testified at trial that he is familiar with Rogers.  Reimer identified Rogers in Williams's video recording and from photos obtained from Harbor Light's security cameras.  The security cameras depicted a male leaving Harbor Light at 11:02 a.m. on the morning of the robbery.  Reimer explained that Harbor Light is approximately a ten minute walk from Tower City.  The male in the security camera photos, that Reimer identified at trial as Rogers, was wearing clothing that was identical to the clothing worn by the assailant in the white shirt.

{¶10} On February 24, 2017, at the close of trial, the jury returned its verdict finding

---

[2] The lineup was created by Detective Michael Kitchen and administered by another detective.  (Tr. 319-320.)

[3] Harbor Light is located at East 18th Street and Prospect Avenue in Cleveland, Ohio.

Rogers guilty on all counts. Furthermore, the trial court found Rogers guilty on the underlying notice of prior conviction and repeat violent offender specifications. The trial court ordered a presentence investigation report and set the matter for sentencing.

{¶11} The trial court held a sentencing hearing on April 6, 2017. The trial court merged the aggravated robbery offenses charged in Counts 1 and 2, the theft offense charged in Count 5, and the kidnapping offense charged in Count 6 as allied offenses for sentencing purposes. The trial court also merged the felonious assault offenses charged in Counts 3 and 4. The state elected to sentence Rogers on Counts 1 and 3. The trial court sentenced Rogers to an aggregate prison term of 14 years: 11 years on the aggravated robbery count consecutive to the 3-year firearm specification; 8 years on the felonious assault count consecutive to the 3-year firearm specification; and three years on the having weapons while under disability count. The trial court ordered the aggravated robbery, felonious assault, and having weapons while under disability counts to run concurrently. Finally, the trial court ordered Rogers to pay restitution to the victim in the amount of $1,550.

{¶12} On June 9, 2017, Rogers filed the instant appeal, pro se, challenging his convictions. This court granted Rogers's motion for appointment of appellate counsel on June 20, 2017, and appointed appellate counsel to represent Rogers in this appeal.

{¶13} Rogers assigns four errors for review:

I. The trial court erred by permitting the introduction and admission into evidence of an unauthenticated video.

II. Appellant's counsel was ineffective.

III. Appellant's felonious assault conviction was unsupported by sufficient evidence.
IV. Appellant's convictions were against the manifest weight of the evidence.

## II. Law and Analysis

### A. Admission of Evidence

**{¶14}** In his first assignment of error, Rogers argues that the trial court erred in permitting the introduction of the video evidence of the incident, recorded by Williams on his cell phone. Rogers argues that the state failed to authenticate the video and failed to establish a chain of custody.

**{¶15}** The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). "A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound." *State v. Taylor*, 8th Dist. Cuyahoga No. 98107, 2012-Ohio-5421, ¶ 22, citing *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 16-18 (2d Dist.). Further, this abuse of discretion must have materially prejudiced the defendant. *State v. Lowe*, 69 Ohio St.3d 527, 532, 634 N.E.2d 616 (1994), citing *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

> Evid.R. 901(A) provides for the authentication or identification of evidence prior to its admissibility. The rule provides, in pertinent part: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). By way of illustration, Evid.R. 901(B) provides that evidence may be properly authenticated by "testimony of witness with knowledge" that "a matter is what it is claimed to be." Further, the authentication requirement of Evid.R. 901(A) is a low threshold that does not require conclusive proof of authenticity, but only sufficient foundation evidence for the trier of fact to conclude that the evidence is what its proponent claims it to be. *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 21, citing *Yasinow v. Yasinow*, 8th Dist. Cuyahoga No. 86467, 2006-Ohio-1355, ¶ 81.

*State v. Maust*, 8th Dist. Cuyahoga No. 103182, 2016-Ohio-3171, ¶ 24.

**{¶16}** In the instant matter, as noted above, the record reflects that Williams recorded the

May 29, 2015 robbery with his cell phone. King testified and affirmed that the video introduced was an accurate representation of what happened that day. Williams also identified the video introduced by the state as the video he had recorded. Accordingly, we find the state satisfied Evid.R. 901(A).

{¶17} Rogers further argues that the state failed to establish a proper chain of custody pertaining to the video because Williams had the video uploaded online rather than providing it directly to the police. We find no merit to this argument.

> When dealing with chain of custody matters, the state bears the burden of establishing the proper chain of custody. *In re Lemons*, 77 Ohio App.3d 691, 693, 603 N.E.2d 315 (8th Dist.1991); *see also State v. Ferrara*, [2015-Ohio-3822, 42 N.E.3d 224, ¶ 14 (7th Dist.)]. To meet its burden, the state must only show that it is reasonably certain that substitutions, alterations, or tampering did not occur. *Id*. The state does not have to negate all possibilities of substitution or tampering. *Id*. Further, breaks in the chain of custody go to the weight of the evidence, not its admissibility. *State v. Howell*, 7th Dist. Mahoning No. 10-MA-148, 2012-Ohio-4349, ¶ 79, citing *State v. Blevins*, 36 Ohio App.3d 147, 150, 521 N.E.2d 1105 (10th Dist.1987).

*Maust* at ¶ 27.

{¶18} In this case, the testimony of King and Williams refuted any potential tampering allegation pertaining to the video. To the extent that Rogers can fault the state for not taking direct possession of the video from Williams's phone, the matter did not affect admissibility but rather goes to the weight of the evidence. *See United States v. Broomfield*, 591 Fed.Appx. 847, 851-852 (11th Cir.2014) (detailing the government's ability to authenticate videos recovered online).

{¶19} Based on the foregoing analysis, Rogers's first assignment of error is overruled.

## B. Ineffective Assistance of Counsel

{¶20} In his second assignment of error, Rogers argues that he was denied his

constitutional right to the effective assistance of counsel.

{¶21} In order to establish a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶22} In the instant matter, Rogers argues that his counsel was ineffective for (1) failing to object to the testimony of Detective Michael Kitchen, (2) failing to impeach King's testimony that he identified Rogers to police in a pretrial photo lineup with less than 100 percent certainty, (3) failing to present a detailed argument in support of counsel's Crim.R. 29 motion for a judgment of acquittal, (4) failing to emphasize specific evidentiary points during closing arguments, and (5) failing to bifurcate the having weapons while under disability count. Rogers asserts that the cumulative effect of trial counsel's deficient performance deprived him of a fair trial.

{¶23} Regarding Rogers's ineffective assistance claim based on counsel's failure to object to Detective Kitchen's testimony, the decision of whether to object, like the decision of whether to file a motion to suppress, is a "tactical decision." *State v. Frierson*, 8th Dist. Cuyahoga No. 105618, 2018-Ohio-391, ¶ 25, citing *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. "Accordingly, 'the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel.'" *Frierson* at *id.*, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.

> Experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections,

despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140.

**{¶24}** After reviewing the examples cited by Rogers, we find that he failed to demonstrate a reasonable probability that but for counsel's failure to object to Detective Kitchen's testimony, the outcome at trial would have been different. Accordingly, we find no merit to this ineffective assistance claim.

**{¶25}** Regarding Rogers's ineffective assistance claim based on counsel's failure to impeach the testimony of King and King's pretrial identification of Rogers, the record reflects that the trial court addressed this purported error at trial, outside the presence of the jury. The trial court noted that Rogers's counsel had laid the groundwork to impeach King's claim through the later testimony of Detective Kitchen. Furthermore, the record reflects that counsel did, in fact, impeach King's pretrial identification through the cross-examination of Detective Kitchen. Accordingly, Rogers suffered absolutely no prejudice in this instance.

**{¶26}** Regarding Rogers's ineffective assistance claims based on counsel's failure to present a detailed argument in support of counsel's Crim.R. 29 motion for a judgment of acquittal and failure to emphasize specific evidentiary points during closing arguments, we find no prejudice to Rogers in this instance. The sole argument his attorney may have bolstered in support of the Crim.R. 29 motion or during closing arguments is that the state failed to present sufficient evidence of serious physical harm to support the felonious assault charge. As set forth in further detail in the analysis of Rogers's third assignment of error, pertaining to the sufficiency of the evidence, we find that Rogers cannot demonstrate prejudice resulting from counsel's alleged errors because the record contains sufficient evidence of serious physical harm. Accordingly, this ineffective assistance claim fails.

**{¶27}** Regarding the ineffective assistance claim based on counsel's failure to bifurcate the having weapons while under disability count, Rogers argues that counsel's deficient performance in this regard exposed the jury to his prior conviction for burglary.[4] In support of his argument, Rogers directs this court to *State v. Jenkins*, 8th Dist. Cuyahoga No. 91100, 2009-Ohio-235.

**{¶28}** In *Jenkins*, this court held that a defense counsel's failure to request bifurcation of the having a weapon while under disability charge contributed to a finding of ineffective assistance of counsel. The panel in *Jenkins* found that this failure alone would not "constitute ineffective assistance of trial counsel," but that it "add[s] to the cumulative nature of counsel's errors," because it could not "conceivably be considered a trial tactic" under the facts and circumstances of the case. *Id*. at ¶ 17.

**{¶29}** In *State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, this court reiterated the concern regarding defense counsel's failure to seek bifurcation of a charge of having weapons while under disability, but refused to reverse Thompson's conviction stating, "[t]he failure to bifurcate the disability charge did not taint the entirety of the proceedings to the extent that a reasonable probability exists that the outcome of trial would have been different had the charge been separated." *Id*. at ¶ 40.

**{¶30}** After reviewing the record, we find the present case to be more akin to the situation presented in *Thompson* rather than that in *Jenkins*. Here, the entire incident was captured on video by Williams. Rogers was directly identified as the assailant wearing the white shirt from still frames of his face taken from Williams's video, the testimony of King, and the distinct tattoo on his leg. The state introduced additional circumstantial evidence of identification through the

---

[4] Cuyahoga C.P. No. CR-09-529630-A.

testimony of Reimer, who identified Rogers in photos taken from Harbor Light's surveillance system. Reimer's testimony established that Rogers left Harbor Light roughly 30 minutes prior to the robbery wearing clothing identical to the man that can be seen attacking King in the video created by Williams.

{¶31} Based on this evidence that the state introduced at trial, we cannot say that Rogers has established that a reasonable probability exists that the outcome of trial would have been different had his counsel moved to bifurcate the having weapons while under disability charge. Accordingly, this ineffective assistance claim fails.

{¶32} Finally, Rogers argues that the cumulative effect of his trial counsel's errors deprived him of a fair trial. Based on the foregoing analysis, however, we cannot say that the cumulative effect of counsel's purported errors denied Rogers his constitutional right to the effective assistance of counsel or deprived Rogers of a fair trial.

{¶33} For all of the foregoing reasons, Rogers's second assignment of error is overruled.

## C. Sufficiency

{¶34} In his third assignment of error, Rogers argues that the state failed to present sufficient evidence to support his conviction for felonious assault in violation of R.C. 2903.11(A)(1).

{¶35} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed, but whether, if believed, the evidence admitted at trial supported the conviction. *Thompkins* at 387.

**{¶36}** Rogers argues that the state failed to establish that he caused serious physical harm to King in this instance. R.C. 2901.01(A)(4) defines serious physical harm, in relevant part, as:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> * * *
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶37}** This court has held that "'[t]he degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.'" *State v. Miller*, 8th Dist. Cuyahoga No. 98574, 2013-Ohio-1651, ¶ 18, quoting *State v. Irwin*, 7th Dist. Mahoning No. 06 MA 20, 2007-Ohio-4996, ¶ 37. The extent or degree of a victim's injuries is "normally a matter of the weight rather than the sufficiency of the evidence." *Irwin* at ¶ 37, citing *State v. Salemi*, 8th Dist. Cuyahoga No. 81091, 2002-Ohio-7064, ¶ 34.

**{¶38}** This court has historically applied a liberal interpretation of "serious physical harm to persons." *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 20. This court has held that, in general, "a trial court does not err in finding serious physical harm where the

evidence demonstrates the victim sustained injuries necessitating medical treatment." *Id.*; *see also Miller* at ¶ 18 ("when a victim's injuries are serious enough to cause the victim to seek medical treatment, it may be reasonably inferred that the force exerted on the victim caused serious physical harm.").

**{¶39}** In the instant matter, the record contains evidence that King suffered a concussion and head trauma as a result of being slammed to the ground by Rogers and pistol whipped in the back of the head during the robbery. "A concussion is a mental condition that would normally require hospitalization." *State v. Long*, 2014-Ohio-4416, 19 N.E.3d 981, ¶ 57 (11th Dist.). Many appellate districts have found that a concussions satisfies the serious physical harm threshold. *In re E.B.*, 3d Dist. Auglaize No. 2-17-21, 2018-Ohio-1683, ¶ 22, citing *Long* at *id.*, *State v. Burks*, 3d Dist. Seneca No. 13-05-36, 2006-Ohio-2142, ¶ 7, 22, and *Davis* at ¶ 22-23.

**{¶40}** In *Davis*, this court found sufficient evidence of serious physical harm where the victim sought medical treatment for a concussion, cuts, and scrapes. *Id*. at ¶ 22. In *Burks*, the Third District found sufficient evidence of serious physical harm where the victim sought medical treatment for a concussion, head trauma, and bruising. *Id*. at ¶ 7, 19.

**{¶41}** In this case, the record reflects that King suffered a concussion during the attack. The dissent suggests that King's concussion was "self-diagnosed." Although the state did not introduce medical records or expert testimony confirming that King suffered a concussion, King's trial testimony indicates that hospital personnel, rather than King himself, determined that King sustained a concussion:

> [PROSECUTOR]: And what happened when you went to the hospital?
>
> [KING]: Nothing. They checked me out. Nothing but a small graze on my ankle and had minor concussion.

(Tr. 184.)

{¶42} King explained that the concussion resulted in "massive headaches[.]" (Tr. 185.) King provided the following description of the pain he suffered as a result of the blow to his head: "[s]hortly afterwards I started getting like horrible headaches. * * * the guys, I couldn't hear them at first. It was hard to hear." (Tr. 199.) He asserted that his headaches lasted for a "[l]ong time" and that he continued to experience the headaches for days after the incident. (Tr. 199.) King explained that at the time of trial — 21 months after the robbery took place — he still had a mark on the top of his head where he was struck. He asserted that his head and/or ears were ringing as a result of being struck with the pistol. King stated that his ears continued to ring when he was at the hospital and that the ringing intensified.

{¶43} In addition to the concussion, headaches, and head trauma, King also testified that a bullet from one of the two gunshots fired at him "grazed" his ankle. Although King stated that the bullet did not break through his skin, he asserted that his ankle hurt "for like the first couple of weeks" after the incident. (Tr. 184.)

{¶44} Finally, King testified that two doctors diagnosed him with post-traumatic stress disorder ("PTSD"). Although the state did not introduce medical records or expert testimony confirming King's diagnosis, King explained that he suffered night tremors and flashbacks from the incident: "It affected my sleep. And I would wake up in the middle of the night screaming and fighting and it got to the point where I had to go to the doctor and have a psychological evaluation, and I was diagnosed with [PTSD]." (Tr. 202.) King was prescribed medication to address these issues he was experiencing as a result of the incident.

{¶45} Although the state did not present medical records detailing the treatment that King received for his injuries or testimony from the medical professionals that treated King, King's

testimony establishes that he did, in fact, receive medical treatment for his injuries. King testified that he was transported by ambulance to Marymount Hospital where he was treated and released.

{¶46} For all of the foregoing reasons, we find that the record contains sufficient evidence of serious physical harm. Based on King's testimony regarding the injuries he sustained during the robbery, particularly the concussion and head trauma, the jury could have reasonably inferred that King suffered serious physical harm. Accordingly, Rogers's felonious assault conviction is supported by sufficient evidence. Rogers's third assignment of error is overruled.

### D. Manifest Weight

{¶47} In his fourth assignment of error, Rogers argues that his convictions are against the manifest weight of the evidence.

{¶48} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶49} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the

weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶50}** In the instant matter, Rogers's sole argument in support of his manifest weight challenge is that the state's evidence identifying him as the assailant in the white shirt was not credible. We disagree.

**{¶51}** After reviewing the record, we find that the state presented substantial and credible evidence from which the jury could have identified Rogers as one of King's assailants and determined that Rogers was involved in the robbery. Based on the facts in the record before this court, we cannot say this is the exceptional case that requires reversal under the manifest weight standard.

**{¶52}** Accordingly, Rogers's fourth assignment of error is overruled.

### III. Conclusion

**{¶53}** After thoroughly reviewing the record, we overrule Rogers's assignments of error and affirm his convictions. The trial court did not err or abuse its discretion in permitting the introduction of the video evidence recorded on Williams's cell phone. Rogers was not denied his constitutional right to the effective assistance of counsel. Rogers's felonious assault conviction was supported by sufficient evidence because the evidence in the record demonstrates

that King suffered serious physical harm.  Rogers's convictions are not against the manifest weight of the evidence.

**{¶54}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's convictions having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, J., CONCURS;
EILEEN A. GALLAGHER, A.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

EILEEN A. GALLAGHER, A.J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶55}** For the following reasons, I respectfully dissent, in part, from the majority opinion. Because I find that the state failed to present sufficient evidence of serious physical harm to support Rodgers' conviction for felonious assault on Count 3, I would modify that conviction to simple assault.

**{¶56}** The term "serious physical harm" as it pertains to the present case is defined in R.C. 2901.01(A)(5) as:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

* * *

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶57} This court has held that "[t]he degree of harm that rises to level of 'serious' physical harm is not an exact science" given that the definition uses terms such as "substantial," "temporary," "acute" and "prolonged." *Miller*, 8th Dist. Cuyahoga No. 98574, 2013-Ohio-1651, at ¶ 18, quoting *Irwin*, 7th Dist. Mahoning No. 06 MA 20, 2007-Ohio-4996, at ¶ 37. The extent or degree of a victim's injuries is "normally a matter of the weight rather than the sufficiency of the evidence." *Irwin* at ¶ 37, citing *Salemi*, 8th Dist. Cuyahoga No. 81091, 2002-Ohio-7064, at ¶ 34.

{¶58} This court has historically applied a liberal interpretation of "serious physical harm to persons." *Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, at ¶ 20. We have held that, in general, a trial court does not err in finding serious physical harm where the evidence demonstrates that the victim sustained injuries necessitating medical treatment. *Id.*; *see also Miller* at ¶ 18 ("when a victim's injuries are serious enough to cause the victim to seek medical treatment, it may be reasonably inferred that the force exerted on the victim caused serious physical harm.").

{¶59} Serious physical harm has been found where a victim sustains a bloody cut and/or significant swelling to the face, even where there is no evidence that stitches were required. *See, e.g.*, *State v. Payne*, 8th Dist. Cuyahoga No. 76539, 2000 Ohio App. LEXIS 3274 (July 20,

2000) (bloody, cut and swollen right eye was sufficient to establish serious physical harm because the injury was a temporary, serious disfigurement).

{¶60} In this instance, I find no evidence of serious physical harm in the record. The most significant injury King described in his testimony was his self-diagnosed "mild concussion" that resulted in headaches. No medical records were introduced to substantiate King's self-diagnosis. King testified that of the two gunshots fired at him by Rodgers' compatriot, only one shot managed to graze his ankle and did not require medical attention. Although King testified that he suffered from PTSD as a result of the incident, his testimony did not establish that the condition was such that it required hospitalization or prolonged psychiatric treatment.

{¶61} Therefore, I would modify Rodgers' conviction for felonious assault to simple assault.